UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,

    Plaintiff,

v.                                          Criminal Case No. 13-20238

Joshua Koenig,                    Honorable Sean F. Cox

    Defendant.

_____/

## OPINION & ORDER
## DENYING DEFENDANT'S MOTIONS TO SUPPRESS

In this action, Defendant Joshua Koenig ("Defendant") is charged with unlawful receipt and possession of child pornography. On June 28, 2013, Defendant filed a Motion to Suppress Statements (Docket Entry No. 14) and a Motion to Suppress Evidence (Docket Entry No. 16). The Court held an evidentiary hearing, and heard oral argument as to both of these motions, on August 28, 2013. As explained below, this Court shall DENY Defendant's motions.

### BACKGROUND

Defendant was indicted in this action on March 26, 2013. The Indictment charges him with: 1) receipt of child pornography, in violation of 18 U.S.C. § 2252A(a)(2) (Count One), and 2) possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B).[1]

These charges follow a search and seizure at Defendant's residence in Marine City, Michigan on January 22, 2013, and statements that Defendant made to law enforcement officers on January 30, 2013, while Defendant was detained at the St. Clair County Jail.

On June 28, 2013, Defendant filed two different motions to suppress.

---

[1] The Indictment also contains forfeiture allegations.

**Defendant's Motion To Suppress Statements**

Defendant's first Motion to Suppress, Docket Entry No. 14, asks the Court to suppress statements that Defendant made to law enforcement officers on January 30, 2013. Defendant contends that his statements to officers were coerced by their statements of leniency and therefore his statements were not knowing and voluntary and should be suppressed. He also argues that his confession is inadmissible under 18 U.S.C. § 3501 for the same reasons.

The Government's response brief asserts that Defendant's motion should be denied because Defendant knowingly and voluntarily waived his *Miranda* rights, his confession was voluntarily given, and is admissible under § 3501. The Government contends that Defendant signed a written waiver of his *Miranda* rights before any substantive conversations took place and that neither of the officers made any statements about Defendant receiving lenient treatment or the length of any possible sentence he was facing.

**Defendant's Motion To Suppress Evidence**

In the second motion, Docket Entry No. 16, Defendant asks the Court to suppress evidence that was seized from his residence on January 22, 2013. Specifically, Defendant asks the Court to suppress: 1) a Kindle computer device and a cell phone that were seized on January 22, 2013; and 2) all information and/or images that were obtained from those two devices.

Defendant contends that the evidence should be suppressed because: 1) the probation officers lacked reasonable suspicion to justify a warrantless search of his residence because the officers relied on hearsay within hearsay, and information from a biased source, that Defendant was in violation of the terms of his parole; 2) after seizing the devices and arresting Defendant, the officers had no justification to search the devices without a warrant or consent; and 3) he did not give valid consent

to the search the devices, due to the officers' representations of leniency.

In its response brief, the Government asserts that Defendant's motion should be denied because: 1) the probation officers' search of the residence and devices were based on reasonable cause to believe Defendant had violated a condition of parole; and 2) Defendant gave valid consent to search the devices.

## Evidentiary Hearing

With the issues so framed by the parties, this Court held an evidentiary hearing and heard oral argument on August 28, 2013. The Government presented three witnesses at the hearing: 1) Michigan Department of Corrections Parole Agent Kenneth Kincaid; 2) FBI Special Agent David Opperman; and 3) Marine City Police Detective Paul Westrick. The Defense called Defendant to testify.

The Government also submitted the following exhibits at the hearing: 1) Michigan Department of Corrections - Order of Parole with Special Conditions for Defendant; 2) Advice of Rights form, signed by Defendant and dated on January 30, 2013; 3) Consent to Search forms signed by Defendant on January 30, 2013, and 4) Defendant's Written Statement signed by him on January 30, 2013.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

Having observed the evidence and the witnesses who testified at the evidentiary hearing, allowing for this Court to assess credibility, having considered the arguments presented by counsel, and having applied the governing legal principles, the Court makes the following findings of fact and

conclusions of law.[2]

## FINDINGS OF FACT

Defendant was previously convicted of criminal sexual conduct charges in state court. After being released from prison in October of 2012, Defendant was on parole under the supervision of Parole Agent Kenneth Kincaid.

Due to the nature of his conviction, Defendant's Order of Parole sets forth several special conditions, including the following:

> 1.12　You must not own, possess, or use any computer or any device capable of connecting to the internet either directly or indirectly through a third party provider or reside in any residence in which these are present unless you first obtain written permission from the field agent. . .
>
> 1.4　You must not purchase, possess or use sexually stimulating materials of any kind, or sexually stimulating materials as defined by your relapse prevention plan, therapist or counselor, and/or the field agent. You must not enter places where sexually explicit or stimulating materials are sold or used.

Defendant had supervised visitation with his two children. On or about January 18, 2013, Officer Agent Kincaid was approached by Defendant's former mother-in-law who claimed she had information that Defendant was allegedly in violation of his parole. Defendant's former mother-in-law advised that her two grandchildren, Defendant's biological children, told her that Defendant had given each of them an Amazon Kindle[3] e-reader for Christmas, and that Defendant owned one as well. Agent Kincaid had not given Defendant permission to purchase or possess any Kindle devices.

---

[2]To the extent that a finding of fact is more properly a conclusion of law, and the to the extent that a conclusion of law is more properly a finding of fact, it should be so construed.

[3]An Amazon Kindle e-reader is an electronic tablet device that is primarily used to read e-books, but is also capable of accessing the internet through a wireless internet connection (WiFi).

On a subsequent occasion, Defendant's former mother-in-law returned to Agent Kincaid with one of the Kindles that her grandchildren had. When Agent Kincaid inspected the Kindle, he observed that it was registered to Defendant's e-mail address. Agent Kincaid then opened the Kindle's internet browser and saw that one of the first internet searches conducted was a search using the phrase "hot girls."

Agent Kincaid did not believe that either of Defendant's minor children had conducted the search, due to their ages. Based on the information he had, Agent Kincaid was concerned that Defendant had an unauthorized Kindle and that he may be performing searches of a sexual nature.

On January 22, 2013, believing that Defendant was in violation of his parole conditions for possessing an internet-capable device, Parole Agents Kincaid and Symington paid a "home visit" to Defendant's residence at approximately 8:45 a.m. When the officers arrived and knocked on the front door, Defendant opened the door and invited them inside.

When Agent Kincaid entered Defendant's home, he immediately entered the living room area. Once inside the living room, he observed a Kindle device, in plain view, sitting on a couch. Agent Kincaid heard the Kindle playing music and saw that the music was streaming through a music website called Spotify. Agent Kincaid concluded that the Kindle was connected to the internet. When questioned, Defendant admitted to Agent Kincaid that the Kindle belonged to him.

While in the living room, Agent Kincaid also observed what appeared to be a "smartphone," (i.e. a cellular telephone capable of accessing the internet), sitting on an end table. Agent Kincaid believed that the phone was a smartphone because it had "application" icons on the main screen. Defendant also admitted to Agent Kincaid that the smartphone belonged to him.

Having determined that Defendant violated his parole conditions by possessing internet-

capable devices, Agent Kincaid arrested Defendant and seized the Kindle and smartphone. While Agents Kincaid and Symington were transporting Defendant to jail, Defendant gave Agent Kincaid the passcode to Defendant's smartphone and asked Agent Kincaid to look up his fiance's phone number for him. Agent Kincaid then asked Defendant for permission to search the smartphone, and Defendant consented to Agent Kincaid's request. Agent Kincaid also asked Defendant for permission to search the Kindle, to which Defendant consented as well. Upon inspection of the contents of Defendant's Kindle later that day, Agent Kincaid found approximately sixteen images of what appeared to be child pornography.[4]

Due to the apparent criminal nature of the items found on Defendant's Kindle, Agent Kincaid contacted the Marine City Police Department for further investigation. Agent Kincaid discussed his findings with Detective Paul Westrick, who in turn contacted FBI Special Agent David Opperman for assistance. Agent Opperman is assigned to the Macomb Area Computer Enforcement (MACE) task force, which focuses on child exploitation cases. Both Detective Westrick and Agent Opperman participated in the investigation of this matter due the uncertainty as to which governmental entity would ultimately prosecute the case.

On January 30, 2013, at approximately 9:47 a.m., Agent Opperman and Detective Westrick arrived at the St. Clair County jail. Agent Opperman and Detective Westrick separated Defendant from the general population of the jail and placed him in a conference room for questioning. Both officers introduced themselves and explained the purpose for their visit. Agent Opperman conducted the interview and Detective Westrick was present primarily to observe.

---

[4]Agent Kincaid found images of adult males having intercourse with infant children and various pictures of young children posed nude and/or engaged in sexual activities.

At about 9:50 a.m., Agent Opperman presented Defendant with his "Advice of Rights" form, which contained all of Defendant's *Miranda* rights. Agent Opperman read the Advice of Rights form aloud to Defendant. Defendant did not ask any questions about the Advice of Rights form nor did he indicate any misunderstanding of the contents of the form.

On the Advice of Rights form, Defendant signed his initials next to the "waiver of rights" paragraph indicating that he read the form, understood what his rights were, and was willing to answer questions without a lawyer present. Defendant also signed the form again at the bottom of the page, alongside the signatures of Agent Opperman and Detective Westrick.

At no point before or after signing the Advice of Rights form did the Defendant ever seek to modify or amend any of the language contained in the form. Defendant did not ask any questions regarding his rights and never asked to speak to an attorney.

Sometime during the interview, Agent Opperman presented Defendant with two "Consent to Search" forms. These forms requested that Defendant consent to Agent Opperman's search of Defendant's Amazon Kindle and smartphone, both of which had been seized by Agent Kincaid when Defendant was arrested. Defendant signed both Consent to Search forms. Notably, Defendant also signed his initials next to the following sentences appearing on each form:

2. I have been advised of my right to refuse consent.

3. I give this permission voluntarily.

Defendant participated in the interview with Agent Opperman and Detective Westrick for approximately an hour. The interview was non-confrontational and relaxed, and Defendant's demeanor was calm and cooperative.

Near the end of the interview, Agent Opperman and Defendant agreed to memorialize their

discussion in a written statement. Preparation of the statement was a collaborative process between the two of them, meaning that Defendant dictated the content of the statement to Agent Opperman, but Agent Opperman physically wrote out the statement. Once the statement was completed, Defendant signed his initials at the beginning and end of each written paragraph. Defendant, Agent Opperman and Detective Westrick all signed at the bottom of the last page of the statement.

Of particular significance is a passage contained in Defendant's signed, written statement, which reads:

> Agent Opperman and Detective Westrick met with me today and advised me of my rights. I advised that I understood my rights and voluntarily waived my rights for the purpose of this interview. I have been promised nothing nor have I been coerced in any way. I just want to cooperate and get the help I need.

At some point during the interview, Defendant asked Agent Opperman what kind of prison sentence he was facing. Agent Opperman responded that he had no idea and could not answer the question. Neither Agent Opperman nor Detective Westrick ever made any statement or promise of leniency to Defendant. Neither Agent Opperman nor Detective Westrick ever made any statement or promise regarding potential sentences to Defendant. Neither Agent Opperman nor Detective Westrick ever had any discussion with Defendant regarding sentencing guidelines.

## ANALYSIS & CONCLUSIONS OF LAW

"The Fourth Amendment bars unreasonable searches and seizures by the government." *United States v. Herndon*, 501 F.3d 683, 687 (6th Cir. 2007), *citing* U.S. Const. amend. IV. "However, the Supreme Court has made clear that the nature of the relationship between state actors and individuals subject to state supervision in lieu of or following release from prison alters the relevant analysis under the Fourth Amendment." *Id.*

"In *Griffin*, the Supreme Court assessed the validity of a search conducted pursuant to a state regulation permitting a warrantless search of a probationer's home where a probation officer had 'reasonable grounds' to believe that the probationer was in possession of contraband." *Id*. (citing *Griffin v. Wisconsin*, 483 U.S. 868, 870-71 (1987)). In *Griffin*:

> The Court concluded that supervision of probationers constituted a "special need" justifying a comparatively greater intrusion on the privacy of individuals subject to the terms and conditions of probation. *Id*. at 875, 107 S.Ct. 3164. It deemed the search of the petitioner's residence reasonable under the Fourth Amendment "because it was conducted pursuant to a valid regulation governing probationers," *id*. at 880, 107 S.Ct. 3164, that is, a regulation that independently satisfied the Fourth Amendment's reasonableness requirement, *id*. at 873, 107 S.Ct. 3164.

*Herndon,* 501 F.3d at 687-88.

"Because the special needs of parole systems mirror those of probation systems, subsequent courts logically extended the *Griffin* exception to the warrant and probable cause requirement to searches of parolees as well." *United States v. Loney*, 331 F.3d 516, 520 (6th Cir. 2003) (citations omitted).

As both parties in this case acknowledge in their briefs, "[i]n analyzing a special needs search of a parolee under *Griffin* and its progeny, courts conduct a two-pronged inquiry." *Loney,* 331 F.3d at 520. "First, courts examine whether the relevant regulation or statute pursuant to which the search was conducted satisfies the Fourth Amendment's reasonableness requirement." *Id*. "If so, courts then analyze whether the facts of the search itself satisfy the regulation or statute at issue." *Id*.

**1.     It Is Undisputed That The Relevant Regulation Satisfies The Fourth Amendment's Reasonableness Requirement.**

The applicable regulation here, Michigan Admin. Code R. 791.7735, provides that:

> (1) A parole agent may conduct a warrantless search of a parolee's person or property under any of the following circumstances:

>    (a) Incident to a lawful arrest . . .
>
>    (b) A stop and frisk, if there is reasonable cause to believe that the parolee is presently involved in criminal conduct, has violated a condition of parole, or is carrying a weapon.
>
>    (c) Seizure of evidence or contraband in plain view.
>
>    (d) With the consent of the parolee or a third party having mutual control over the property to be searched.
>
> (2) Where none of the circumstances specified in subrule (1) of this rule are present and there is reasonable cause to believe that a violation of parole exists, a parole agent may conduct a search of a parolee's person or property if, as soon as possible thereafter, the parole agent files a written report with his or her supervisor setting forth the specific reasons for the search, describing the location or place searched, and describing the specific items seized.

Mich. Admin. Code R. 791.7735.

"With respect to the first prong of the *Griffin* analysis, it is now beyond question that a state statute survives Fourth Amendment scrutiny if it authorizes searches of parolees based on a reasonable suspicion that an individual is violating the terms or conditions of parole." *Loney*, 331 F.3d at 520-21. It is undisputed in this case that the above regulation satisfies the Fourth Amendment's reasonableness standard. Defendant contends that the second prong of the inquiry cannot be met here.

2.  **Parole Agent Kincaid Had Reasonable Cause to Believe That Defendant Had Violated His Parole Conditions And Could Therefore Search Defendant's Home.**

"As for the second prong, the reasonable suspicion standard is less stringent than the probable cause requirement." *Loney*, 331 F.3d at 521. It requires that, given the "totality of the circumstances," parole officers provide "articulable reasons" and "a particularized and objective basis" for their suspicion of a parole violation. *Id.*

10

Agent Kincaid had reasonable cause to believe that Defendant was in violation of his parole conditions. First, Agent Kincaid relied on articulable reasons for his suspicion, including the tip from Defendant's former relative and her production of a Kindle linked to Defendant's e-mail address. This alone constituted a clear violation of Defendant's parole condition 1.12 and an independent basis for which Defendant could have been arrested. Furthermore, it was reasonable for Agent Kincaid to be even more concerned when he uncovered an internet search for "hot girls" on the Kindle, as possession of sexually explicit material would be a clear violation of Defendant's parole condition 1.4.

Given the totality of the circumstances, Agent Kincaid had reasonable cause to believe that Defendant was in possession of an internet-capable device and, therefore, in violation of one or more parole conditions.

3. **Moreover, After Defendant Gave The Parole Agents Consent To Enter Agent Kincaid Observed The Kindle And Cell Phone In Plain View And He Was Therefore Authorized Under The Statute To Search And Seize Those Items.[5]**

Agent Kincaid endeavored to search Defendant's home for evidence confirming his suspicion that Defendant violated parole condition 1.12, which prohibited him from possessing or using any internet-capable device. In addition to having reasonable cause to search Defendant's home, Defendant consented to Agent Kincaid's search when he affirmatively allowed the officers to enter his home. Mich. Admin. Code R. 791.7735(1)(d) (warrantless search permissible "with consent of the parolee . . . ."); *see also U.S. v. Carter*, 378 F.3d 584, 588 (6th Cir. 2007) (standing for the proposition that consent to a search can be manifested by words or conduct).

---

[5]In addition, while in route to the police station, Defendant gave Agent Kincaid verbal consent to search his kindle and cell phone.

Upon entering Defendant's home, Agent Kincaid did, in fact, see two devices in plain view that he reasonably believed to be capable of accessing the internet. These items were evidence of Defendant's parole violation.

Michigan law permits the warrantless search of property following the "[s]eizure of evidence or contraband in plain view." Mich. Admin. Code R. 791.7735(1)(c). Based on Michigan law, Agent Kincaid had the ability to lawfully seize and search the devices without first obtaining a search warrant. *See* Mich. Admin. Code R. 791.7735(1)(c).

4. **In Order For Defendant's Confession To Be Admissible, The Government Must Establish That Defendant Voluntarily, Knowingly, And Intelligently Waived His *Miranda* Rights.**

In order for Defendant's written statement to be admissible under the Fifth Amendment, Defendant must have "voluntarily, knowingly and intelligently" waived his *Miranda* rights. *Miranda v. Arizona*, 384 U.S. 436, 444 (1966); *see also* 18 U.S.C. § 3501(a) (providing that a confession is admissible in evidence if it is "voluntarily given.").

This Court's inquiry into the validity of a waiver "has two distinct dimensions." *Moran v. Burbine*, 475 U.S. 412, 421 (1986). "First, the relinquishment of the right must have been voluntary in the sense that was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Id.*

The Government must prove by a preponderance of the evidence that Defendant's waiver was voluntary and knowing. *Lego v. Twomey*, 404 U.S. 477, 489 (1972).

5. **Defendant's Confession Was Voluntarily Given Under The Totality Of The Circumstances Here.**

There is no bright-line rule for determining whether a suspect's confession or incriminating statement was voluntarily given. Rather, in determining whether a confession has been elicited by means that are unconstitutional, the Court looks to "the totality of the circumstances concerning whether a defendant's will was overcome in a particular case." *United States v. Johnson*, 351 F.3d 254, 260 (6th Cir. 2003). The circumstances to be considered include the defendant's age, level of education and intelligence, physical condition and emotional state at the time of the confession, awareness of his legal rights, whether he was advised of his *Miranda* rights, the length of questioning, the use of physical punishment, and the deprivation of food, water, or sleep, or other comforts. *Jackson v. McKee*, 525 F.3d 430, 433034 (6th Cir. 2008); *United States v. Mahan*, 190 F.3d 416, 423 (6th Cir. 1999); 18 U.S.C. § 3501(b).

Defendant was 32 years old when he was interviewed and his written statement prepared. Defendant possesses a G.E.D. and reads and writes English. At the evidentiary hearing on these motions, Defendant testified clearly and lucidly. Defendant possesses a level of intelligence capable of making a knowing and voluntary waiver of his constitutional rights.

Furthermore, it cannot be said that Defendant was unaware of his legal rights. Defendant was apprised of his *Miranda* rights before any substantive discussions with Agent Opperman and Detective Westrick took place. Also, this was not Defendant's first encounter with the criminal justice system. "According to the Presentence Investigation Report from defendant's 2004 rape conviction, defendant has four prior convictions as a juvenile and three convictions as an adult." (Gvmt.'s Resp. at 2, fn 1). Defendant has been informed of his constitutional *Miranda* rights on numerous occasions in the past.

Defendant was not physically or emotionally compromised during the interview. Agent

13

Opperman testified that Defendant was anxious to talk but was otherwise calm, cooperative, and non-confrontational. Moreover, the interview only lasted approximately one hour, and no evidence suggests that Defendant was physically abused or denied food, water, sleep or any other natural comfort.

Finally, Defendant's statement contains a paragraph admitting that he was not made any promises, guarantees, or coerced in any way in exchange for his statement and confession. Based on the totality of the circumstances, Defendant's statement was made voluntarily.

Defendant asserts that his statement was not voluntarily given because it was coerced by law enforcement officers.

The Sixth Circuit has established three requirements for a finding that a confession was involuntary due to police coercion: 1) the police activity was objectively coercive; 2) the coercion in question was sufficient to overbear the defendant's will; and 3) the alleged police misconduct was the crucial motivating factor in the defendant's decision to offer the statement. *Mahan*, 190 F.3d at 422. Promises of leniency may be coercive if they are broken or illusory. *Johnson,* 351 F.3d at 262.

Here, Defendant asserts that his statements to Detective Westrick and Agent Opperman were coerced by their alleged statements of leniency and therefore Defendant's statements were involuntary and must be excluded from evidence at trial. (Def.'s Motion at ¶ 10; Def.'s Br. at 2-5).

This Court finds, however, that there is no credible evidence that any such statements were made. Additionally, as previously mentioned, Defendant's signed statement contains a paragraph admitting that he was not coerced into giving his statement. This evidence further supports the Court's conclusion that Defendant's statements to Agent Opperman and Defendant Westrick were voluntarily made.

**6.      Defendant's Confession Was Knowingly Made Under The Totality Of The Circumstances Here.**

Defendant also asserts that his waiver was not made knowingly. Defendant's brief argues that his waiver was not knowing because he "was never informed, and never knew he faced a mandatory minimum sentence of 15 years." (Def.'s Br. at 6).

But the "inquiry is not whether 'a criminal suspect know[s] and understand[s] every possible consequence of a waiver of the Fifth Amendment privilege.'" *Clark v. Mitchell*, 425 F.3d 270, 283 (6th Cir. 2005)(quoting *Colorado v. Spring*, 479 U.S. 564, 573 (1987)).

Rather, to determine whether a defendant's confession was knowing and intelligent, the Court applies "a totality of the circumstances test to ascertain whether [Defendant] understood his right to remain silent and to await counsel." *Id.* The circumstances the Court is to consider in making that determination include the background, experience, and conduct of the accused. *Garner v. Mitchell*, 557 F.3d 257, 261 (6th Cir. 2009).

Defendant knowingly made incriminating statements to Agent Opperman and Detective Westrick. Defendant had been informed of his *Miranda* rights that day, including his right to remain silent, his right to have an attorney present during questioning, and the fact that his statements would be used against him in court. Defendant understood the *Miranda* rights when they were read to him. Defendant never asked any questions before he waived his *Miranda* rights, nor did Defendant ever ask to speak with an attorney thereafter. Defendant's demeanor was calm, cooperative, and non-confrontational throughout the interview.

Moreover, to satisfy the "knowing" requirement, it is not necessary for Defendant to have known the precise sentence he faced at the time he waived his right to remain silent. It is sufficient

15

that Defendant appreciated that he faced some punishment by confessing to criminal behavior. *See Clark*, 425 F.3d at 283.

In his signed, written statement, Defendant stated, "I know I'm going to be incarcerated as a result of the downloads . . ." (Gvmt. Ex. 4). Under the totality of the circumstances, this Court finds that Defendant knowingly waived his rights prior to dictating and signing his written statement.

**7. Defendant Gave Agent Opperman And Detective Westrick Valid Consent To Search Both His Kindle And Cell Phone.**

At some point during the interview, Agent Opperman requested that Defendant give consent for his Kindle and smartphone to be searched. Agent Opperman presented Defendant with two Consent to Search forms, one for each device. (Gvmt. Ex. 3). Defendant signed each of the forms, thereby granting Agent Opperman consent to search his devices. Defendant also signed his initials next to three sentences on the consent forms, indicating that he had been advised of his right to refuse consent, that he gave his permission voluntarily, and that he authorized the agents to take any items relevant to their investigation. (Gvmt. Ex. 3).

As previously discussed, no credible evidence shows that Defendant was promised or guaranteed anything, nor coerced in any way prior to signing these forms. In fact, all credible evidence indicates that Defendant was fully cognizant of the consequences of his waiver and consent during the interview. Therefore, this Court finds that Defendant gave Agent Opperman and Detective Westrick valid consent to search his Kindle and his smartphone.

**CONCLUSION & ORDER**

For the reasons set forth above, IT IS ORDERED that Defendant's Motion to Suppress Evidence (Docket Entry No. 16) and Defendant's Motion to Suppress Statements (Docket Entry No.

14) are DENIED.

    IT IS SO ORDERED.

                                        S/Sean F. Cox
                                        Sean F. Cox
                                        United States District Judge

Dated: September 17, 2013

I hereby certify that a copy of the foregoing document was served upon counsel of record on September 17, 2013, by electronic and/or ordinary mail.

                                        S/Jennifer McCoy
                                        Case Manager